State of West Virginia *v.* Vincent McGrail

(No. 8260)

Submitted January 21, 1936. Decided February 4, 1936.

*J. Leonard Baer,* for plaintiff in error.

*Homer A. Holt,* Attorney General, and *W. Holt Wooddell,* Assistant Attorney General, for the State.

KENNA, JUDGE:

Vincent McGrail was convicted of a violation of section 2, article 8, chapter 30 of the Code of West Virginia on August 2, 1932, before J. W. Kindelberger, a justice of the peace of Ohio County, and the judgment of the justice was that he should pay a fine of $25.00 and the costs before the justice. He appealed to the Intermediate Court of Ohio County, and there, after a jury trial, he was found guilty on the 14th day of November, 1932, and,

after the appropriate motions for raising the legal questions involved in the case were overruled, he was sentenced to pay a fine of $25.00 and costs. The Circuit Court of Ohio County affirmed the judgment of the Intermediate Court of that county, and this writ is prosecuted to the later judgment.

The charging part of the w a r r a n t under which McGrail was prosecuted is as follows: "that he, the said Vincent McGrail on the __ day of July, 1932, in the said county, did unlawfully, replace an opthalmic lens, without a prescription from a person authorized under the laws of this state to practice either optometry or medicine and surgery, in violation of section 2, article 8, chapter 30, Official Code of West Virginia * * * ."

The proof offered showed that Mrs. L. B. Gill, an employee of the State Board of Optometry, went to the defendant's place of business on July 27, 1932, and there found the defendant and his wife waiting on their trade. She handed the defendant a pair of glasses in which the right lens was broken, but still in the frame, and asked the defendant if he could replace the broken lens. The defendant replied that he had it in stock, according to Mrs. Gill, and that if she would return at about four thirty, she could then get the glasses with the lens replaced. The version of the defendant and his wife is that Mrs. Gill was told they did not have the lens in stock, but that they could procure it at the American Optical Company. Mrs. Gill paid $2.75, the price required by the defendant, the glasses were taken to American Optical Company, that concern not being registered as an optometrist under the statute, the lens was there replaced, the defendant paying $1.75 for that service, and Mrs. Gill got the glasses from the defendant's place of business that afternoon.

The warrant in this case was drawn under subsection (d) of section 2 of article 8 of chapter 30 of the Code. The four subsections, of which this is one, describe what shall be considered the practice of optometry. The language of subsection (d), which is followed in the charging part of the warrant, is as follows: "The replacement

or duplication of an opthalmic lens without a prescription from a person authorized under the laws of this state to practice either optometry or medicine and surgery." The subsection in question, however, continues as follows: "The provisions of this subsection shall not be construed so as to prevent an optical mechanic from doing the merely mechanical work in such a case." The lens in this case was replaced by the American Optical Company, and while there is no direct proof as to the method that they followed in doing so, the unmistakable inference to be adduced from the facts shown is that it was done by them by the mechanical process of measuring the old lens which was in the frame and manufacturing a new lens in conformity to those measurements. Certainly, there is no proof in this record showing that the lens was replaced otherwise than by "doing the merely mechanical work in such a case." It is perfectly clear that the lens was replaced by "an optical mechanic." There is no proof that the defendant did more in connection with the replacement of the lens than was done by the American Optical Company. We are of the opinion that what that company did was not the practice of optometry, within the definition of the statute, and hence that there has been no offense proven against the defendant.

Another difficulty in the matter is that this record fails to disclose that the lens replaced was, as a matter of fact, an opthalmic lens within the meaning of the statute. In the same subsection, under which the warrant was drawn, the concluding sentence defines an opthalmic lens as follows: "An opthalmic lens within the meaning of this article shall be any lens which has a spherical, cylindrical or prismatic power of value, and is ground pursuant to a prescription." It will be observed that in order to be an opthalmic lens within the statutory definition, the lens must have a spherical, cylindrical or prismatic power and must be ground pursuant to a prescription. The record fails entirely to show that the lens had either spherical, cylindrical or prismatic power or value. Neither does it show that the lens replaced was ground pursuant

to prescription. It is to be presumed that the careful statutory definition of an opthalmic lens was intended to distinguish that type of lens from other lenses, and to make the inhibitions of the statute apply to the one and not to the other. That being so, a violation of the statute is not shown until and unless there is proof bringing the lens that was replaced with one of like kind, within the statutory definition.

Still another difficulty exists in the case. The warrant was drawn under section 2 of article 8 of chapter 30. The four subsections of that section simply set forth the acts which, singly or in combination with each other, shall constitute the practice of optometry. There is no offense defined in section 2; it contains no prohibitive terms. It is section 4 of the same article that makes it unlawful to practice or to offer to practice optometry without a certificate of registration from the West Virginia Board of Optometry. This is the section under which the warrant should have been drafted. Furthermore, the warrant in this case totally fails to charge that the act of the defendant was done "without first applying for and obtaining a certificate of registration for such purpose from the West Virginia Board of Optometry." In the light of the foregoing, we must conclude that there is no definition of an offense in the section under which this warrant was drawn, and, in addition, that the language of the warrant is not sufficient to define an offense under the section which does create it.

For the foregoing reasons, we are of opinion to reverse the judgments of the Circuit Court of Ohio County and of the Intermediate Court of that county, to set aside the verdict of the jury and to dismiss the case.

*Reversed and dismissed.*